## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GARY BOSHEARS,
     Plaintiff,

  vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:14-cv-335
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in

opposition (Doc. 12), and plaintiff's reply (Doc. 13).

### I. Procedural Background

Plaintiff filed applications for DIB and SSI in May of 2011, alleging disability since

January 17, 2011, due to arthritis in the right hand, arthritis in the lower back, and neck

problems. (Tr. 254). Plaintiff's applications were denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative

law judge (ALJ) Deborah Smith. Plaintiff, an impartial medical expert (ME), and a vocational

expert (VE), appeared and testified at the ALJ hearing. On January 7, 2013, the ALJ issued a

decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the

Appeals Council was denied, making the decision of the ALJ the final administrative decision of

the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant

2

can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The [plaintiff] has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Since the alleged onset date of disability, January 17, 2011, the [plaintiff] has had the following severe impairments: history of degloving injury,[1] cervical spine degenerative disc disease, chronic pain syndrome, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. Since the alleged onset date of disability, January 17, 2011, the [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that since January 17, 2011, the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: he [sic] stand and/or walk for a total of 6 hours in an 8-hour workday and sit for a total of 6 hours in an 8-hour workday. He can lift and/or carry 10 to 20 pounds. He is limited to occasional bilateral overhead reaching. He must avoid ladders, ropes, and scaffolds. He can frequently stoop, bend, and climb stairs, and he can never kneel, crouch, or crawl.

6. Since January 17, 2011, the [plaintiff] has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

---

[1] A "degloving injury" is "an injury to an extremity - finger, hand, arm, leg, or foot - in which the soft tissue down to the bone, including neurovascular bundles and sometimes tendons, is peeled off." http://medical-dictionary.thefreedictionary.com/degloving.

[2] Plaintiff's past relevant work was as a construction laborer and glass block installer, which were unskilled jobs performed at the very heavy exertional level; material handler, which was semi-skilled and performed at the heavy exertional level; building maintenance repairman, which was skilled and performed at the medium exertional level; and merchandise deliverer, which was unskilled and performed at the medium exertional level. (Tr. 26).

7. Prior to the established disability onset date, the [plaintiff] was an individual closely approaching advanced age. On September 9, 2012, the [plaintiff]'s age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Prior to September 9, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills. Beginning on September 9, 2012, the [plaintiff] has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Prior to September 9, 2012, the date the [plaintiff]'s age category changed, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). [3]

11. Beginning on September 9, 2012, the date the [plaintiff's] age category changed, considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the [plaintiff] could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. The [plaintiff] was not disabled prior to September 9, 2012, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). His disability is expected to last for 12 continuous months.

(Tr. 21-28).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative occupations such as stamper (950 jobs locally and 144,000 jobs nationally), mail sorter (1,530 jobs locally and 139,000 jobs nationally), and injection mold machine operator (970 jobs locally and 147,000 jobs nationally). (Tr. 28).

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff presents two assignments of error: (1) the ALJ failed to accord proper weight to the opinions of plaintiff's treating and examining physicians in violation of applicable Social Security regulations and rulings and governing case law, and (2) the ALJ erred by rendering a credibility determination that is not supported by substantial evidence. (Docs. 9, 13).

**1. The ALJ erred by failing to properly weigh the opinions of plaintiff's treating physician.**

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion "controlling weight," the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.

6

In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937. *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p).

Opinions from nontreating and nonexamining sources are never assessed for "controlling weight." *Gayheart,* 710 F.3d at 376. The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, supportability, and other factors "which tend to support or contradict the opinion," but only if a treating source opinion is not deemed controlling. 20 C.F.R. §§ 404.1527(c), 416.927(c). "A properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians." *Gayheart,* 710 F.3d at 379-80 (citing SSR 96-6p, 1996 WL 374180, at *3) ("In appropriate circumstances, opinions from . . . psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.")).

Here, plaintiff contends that the ALJ was required to give "controlling weight" to the assessment of his treating pain specialist, Dr. John Beresh, M.D., who restricted plaintiff to a full range of sedentary work. (Doc. 9 at 9, citing Tr. 343-46). Plaintiff contends the ALJ did not give "good reasons" for finding the treating physician's opinion was entitled to less than "controlling weight" and did not consider the regulatory factors to determine the weight the opinion should be afforded as required under 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). (*Id.* at 10-12). Plaintiff alleges Dr. Beresh's opinion is consistent with that of examining physician Dr. Ashok Kejriwal, M.D., which the ALJ summarily dismissed without conducting a proper evaluation. (*Id.* at 12-13). Plaintiff acknowledges that Dr. Kejriwal did not cite any clinical findings in support of his assessment, but plaintiff asserts that Dr. Kejriwal was aware he had been involved in an automobile accident and had undergone an MRI. (Doc. 9 at 13). Plaintiff further alleges that Dr. Kejriwal's opinion is entitled to more weight than the opinions of the nonexamining physicians because under the regulations, the opinion of an examining source is generally entitled to more weight than the opinion of a nonexamining source. (Doc. 13 at 7, citing 20 C.F.R. § 404.1527(c)(1)).

The Commissioner contends that substantial evidence supports the ALJ's decision to reject the opinions of the treating and examining physicians and rely instead on the testimony and opinion of the ME, who analyzed and interpreted a "complex medical record," and the opinions of the nonexamining state agency physicians. (Doc. 12 at 6-17). The Commissioner alleges that because the ME was able to review all of the medical evidence of record and had the opportunity to hear plaintiff's testimony, he had a "greater longitudinal perspective" of plaintiff's condition. (*Id.* at 6). The Commissioner contends that the ALJ's discussion of the objective clinical and laboratory findings in the record demonstrates that the ME's analysis is supported.

8

(*Id.* at 7-8). The Commissioner also alleges that the ALJ reasonably gave greater weight to the opinions of the nonexamining state agency physicians on the ground their opinions were consistent with the record as a whole and with the ME's testimony. (*Id.* at 8-10).

The ALJ gave "little weight" to the opinion of Dr. Beresh, who completed a questionnaire dated December 9, 2011, which had been prepared by plaintiff's counsel (Tr. 343-46). (Tr. 26). In the questionnaire, Dr. Beresh diagnosed plaintiff with cervical spondylosis, "displacement of cervical invertebral," and "degeneration of cervical invertebral." (Tr. 343). He identified "lumbago" as the "nature of the low back pain" plaintiff complained about. (*Id.*). He opined that plaintiff would have "some degree of impaired sleep secondary to pain, with associated daytime fatigue," but that pain and the side effects of plaintiff's medication would not cause daytime drowsiness and impaired concentration. (Tr. 344). Dr. Beresh opined that plaintiff's "ability to stand/walk at one time" was within normal limits; his "total standing/walking capability in an eight-hour period of time" was within normal limits; the length of time that plaintiff could sit at one time was 30-45 minutes; there were no restrictions on plaintiff's "total sitting capability in an eight-hour period of time"; and he was limited to occasionally lifting/carrying 10 pounds. (Tr. 345). Dr. Beresh concluded that plaintiff "should be capable of an unrestricted range of sedentary work," which the questionnaire defined in accordance with the Social Security regulations.[4] Dr. Beresh opined that plaintiff's disability would be expected to last for at least 12 months. (Tr. 346). Dr. Beresh added the following

---

[4] The regulations define sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

comment to the questionnaire: "I would encourage Mr. Boshears to report fatigue and other side effects to my office as he seems to report to you [plaintiff's counsel]." (*Id.*).

The ALJ gave "little weight" to Dr. Beresh's opinion on two grounds, stating as follows:

> [Dr. Beresh] limited [plaintiff] to sedentary work; however, he also indicated that [plaintiff's] ability to sit, stand, and walk were within normal limits [Tr. 345]. Dr. Bresh [sic] noted that [plaintiff] should report fatigue and other side effects that he related to his attorney, which implies that [plaintiff] never complained of such things to Dr. Bresh [sic] [Tr. 346]. As such, little weight is given to Dr. Bresh's [sic] opinion.

(Tr. 26).

The ALJ's analysis falls far short of meeting the procedural requirements for evaluation of a treating physician's opinion. The regulations require the ALJ to consider whether a treating physician's opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Gayheart,* 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Cole,* 661 F.3d at 937. Although the ALJ indicated that Dr. Beresh's assessment was not supported because it was internally inconsistent, it is clear that the ALJ did not consider the report as a whole. Instead, the ALJ parsed select portions of Dr. Beresh's report to discredit the treating doctor's findings and opinion. *See Germany-Johnson v. Comm'r of Social Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (noting the ALJ "was selective in parsing the various medical reports"). The ALJ indicated that Dr. Beresh's opinion was not reliable because his assessment of plaintiff's sitting, standing and walking limitations was inconsistent with his conclusion that plaintiff was restricted to sedentary work. (Tr. 26). However, in making her finding, the ALJ neglected to consider all of the functional restrictions Dr. Beresh imposed, which included: (1) a restriction limiting plaintiff to sitting 30-45 minutes at one time, and (2) a restriction limiting plaintiff to lifting 10 pounds on an occasional basis. (Tr. 345). These restrictions, if adopted, would preclude plaintiff from

performing "an unrestricted range of light work" as defined in the questionnaire and in the
regulations. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (describing light work as involving lifting
no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10
pounds and as including jobs which involve "sitting most of the time. . . .").[5] (Tr. 344). Thus,
the functional limitations Dr. Beresh imposed and his conclusion restricting plaintiff to sedentary
work do not appear to be inconsistent. The ALJ's decision to discount Dr. Beresh's opinion on
this basis is not substantially supported by the record.

   In addition, the ALJ did not complete the required analysis by considering whether Dr.
Beresh's opinion was "not inconsistent with the other substantial evidence in [the] case
record[.]" *Gayheart,* 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole,* 661
F.3d at 937. Notably, when determining whether Dr. Beresh's opinion was entitled to
"controlling weight," the ALJ made no mention of the MRI findings dated February 11, 2011,
which showed: "1. Broad bilobed disc protrusion involving C5-C6, effacing the cord with mild
cord contour alteration. Concomitant right paracentral active annular tear. 2. C6-C7 broad-
based disc protrusion with gentle ventral cord abutmen. 3. Bilateral Luschka and facet joint
degenerative arthropathy involving C5-C6 and C6-C7, resulting in foraminal stenosis of mild to
moderate severity, left greater than right." (Tr. 336). Nor did the ALJ balance the regulatory
factors that must be considered if the ALJ declines to give a treating source's opinion
"controlling weight." *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ did not
consider the fact that Dr. Beresh was a pain management specialist; the length and nature of the

---

[5] The regulations define "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a
job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the
time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide
range of light work, you must have the ability to do substantially all of these activities. If someone can do light
work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as
loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(a), 416.967(a).

treatment relationship[6]; how well-supported by the evidence Dr. Beresh's opinion was; and how consistent the opinion was with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6).

The Commissioner argues that the ALJ was entitled to discount Dr. Beresh's opinion because the questionnaire he completed, which had been prepared by plaintiff's counsel, was a "biased questionnaire that seemingly attempts to ask leading questions rather than objective ones"; Dr. Beresh's opinion was not consistent with the evidence as a whole and specifically his own treatment notes; and "[w]ithout explanation for his extreme views, the ALJ could reasonably presume that Dr. Beresh may have gone out of his way to opine that Plaintiff was more limited than he really was."[7]  (Doc. 12 at 11-12).  The Commissioner's post-hoc rationalizations do not constitute substantial evidence in support of the ALJ's decision.  Where the ALJ has failed to weigh a treating physician's opinion in accordance with the procedural regulations, the Court cannot excuse the failure even though there may be sufficient evidence in the record that supports the ALJ's decision.  *See Wilson*, 378 F.3d at 546 ("A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion. . . .") (internal citations omitted).  The ALJ failed to conduct the analysis required under the regulations.  The ALJ's failure to follow the governing rules "denotes

---

[6] Plaintiff states that Dr. Beresh treated him approximately nine times over an approximately 16-month period. (Doc. 9 at 10-11).
[7] In making these arguments, the Commissioner has mistakenly attributed the neurosurgical consultation report of Dr. Jonathan Borden, M.D., to Dr. Beresh.  (Doc. 12 at 12, citing Tr. 340-41).

a lack of substantial evidence." *Gayheart*, 710 F.3d at 379 (citing *Cole*, 661 F.3d at 937).[8]

Further, the ALJ's reasons for crediting the opinions of the nonexamining physicians over the opinion of plaintiff's treating physician are not substantially supported by the record. The ALJ gave "great weight" to the opinions of the testifying ME, Dr. Lee Fischer, M.D. (Tr. 25). Dr. Fischer testified as follows: Plaintiff's impairments include cervical spine disease, cervical spondylosis, chronic pain syndrome, cervical degenerative disc disease, and cervical disc herniation. (Tr. 67). He has been treated with physical therapy and pain management. (*Id.*). Plaintiff underwent a neurosurgical consultation for evaluation of neck and arm pain in July 2011 (Tr. 340-41), which showed minimal abnormalities in terms of his physical exam that would support symptoms of radiculopathy or a chronic problem with the left upper extremity. (Tr. 68-69). The consulting neurosurgeon, Dr. Jonathan Borden, M.D., diagnosed a "'whiplash-type' injury with musculoskeletal ligamentous pain along with [a] herniated disc" but no myelopathy ("a condition of the spinal cord"); Dr. Borden made no specific findings of a pinched nerve going from plaintiff's neck down his left arm; and Dr. Fischer interpreted Dr. Borden's notes on the need for surgery to mean that Dr. Borden found no evidence that plaintiff required surgery at that point in time and Dr. Borden "really didn't think he probably would in the future." (Tr. 70). Dr. Fischer opined that plaintiff is capable of performing a restricted range of light work. (Tr. 72). Dr. Fischer found that plaintiff's complaints were out of proportion to the

---

[8] Insofar as plaintiff alleges the ALJ erred by giving "little weight" to the June 2011 assessment of one-time examining physician Dr. Kejriwal restricting plaintiff to less than a full range of sedentary work, plaintiff's arguments are not well-taken. (*See* Tr. 26, citing Tr. 338-39). The ALJ gave valid reasons for discounting Dr. Kejriwal's assessment, which noted only that plaintiff was "severely overweight" and has degenerative disc disease with a bulging disc (Tr. 338), and the ALJ was not required to credit Dr. Kejriwal's opinion simply because he had examined plaintiff on one occasion. *See Gayheart*, 710 F.3d at 379-80 (citing SSR 96-6p, 1996 WL 374180, at *3) (although the regulations provide that the opinions of an examining source are generally entitled to more weight than the opinions of a nonexamining source, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").

neurosurgeon's finding of musculoskeletal injury, or of a musculoskeletal injury without radiculopathy. (Tr. 73). Dr. Fischer testified that plaintiff would not need to change positions between sitting, standing and lying down based on a whiplash injury to his neck and "some cervical degenerative disc disease." (Tr. 78-79).

The ALJ gave "great weight" to Dr. Fischer's opinion that plaintiff would be capable of performing a range of light work on the ground the ME's opinion was based on, and was consistent with, the medical evidence of record as a whole. (Tr. 25). The ALJ noted that according to Dr. Fischer's testimony, the record showed only minimal abnormalities, including diminished sensation in the right hand, and disclosed normal motor strength; Dr. Fischer found no specific evidence of an impinged nerve in plaintiff's neck and no evidence of myelopathy; and Dr. Fischer indicated that plaintiff should exhaust all other treatment before pursuing surgery. (*Id.*).

The ALJ's reasons for crediting Dr. Fischer's opinion are not substantially supported by the record. Dr. Fischer testified that plaintiff's injury resulting from his motor vehicle accident was diagnosed as "just a whiplash ligamentous injury," and Dr. Fischer "assumed" the findings from the February 2011 MRI performed the month after the accident were unchanged from any findings that would have been disclosed by a pre-accident MRI, had one been performed. (Tr. 76-77). By accepting Dr. Fischer's testimony, the ALJ ignored the findings of the consulting neurosurgeon, Dr. Borden. (Tr. 25). Dr. Borden opined that the cervical spine MRI dated February 11, 2011, was notable for C5-6 mild cord contour protrusion with broad bilobed disc protrusion involving C5-6 with mild cord contour alteration, ventral cord abutment at C6-7, and facet joint arthropathy at C5-6 and C6-7 with foraminal stenosis on the left greater than the right. (Tr. 341). Dr. Borden's impression was that plaintiff "has neck pain and back pain following the

14

motor vehicle accident *with a C5-6 herniated disc*.  Symptomatically, he had a 'whiplash' type

of injury with musculoskeletal/ligamentous pain *along with C5-6 herniated disc*." (*Id.*)

(emphasis added).  These findings appear to conflict with Dr. Fischer's testimony that plaintiff

suffered only a whiplash-type musculoskeletal injury (Tr. 76-77). (Tr. 25).  The ALJ did not

attempt to resolve the apparent discrepancy between the ME's testimony and the consulting

neurosurgeon's opinion.

   Further, Dr. Fischer's interpretation of Dr. Borden's opinion on the need for surgery

appears to be unfounded, and the ALJ misconstrued the ME's testimony on this point.

According to the ALJ, the ME "indicated that [plaintiff] should exhaust all other treatment

before pursuing surgery." (*Id.*).  In fact, the ME did not offer this assessment as his own opinion;

instead he testified that he interpreted Dr. Borden's notes on the need for surgery to mean that

Dr. Borden did not believe plaintiff required surgery as of July 2011, the date of his opinion, and

probably would not need it in the future. (Tr. 70).  This does not appear to be a fair reading of

Dr. Borden's notes.  Dr. Borden wrote: "Surgery is not entirely out of the question but given the

axial predominance of his symptoms, he should have pain management strategies first tried and

all conservative measures first exhausted before considering surgery." (Tr. 341).  Dr. Borden

gave no indication as to the likelihood of success of conservative treatment modalities or the

probability of the need for future surgery.

   Finally, although the ALJ found that Dr. Fischer's opinion was based on and consistent

with the medical evidence of record as a whole, the only evidence the ALJ cited in support of her

finding was the "most recent pain management examination." (Tr. 25).  The ALJ cited no

specific medical evidence.  Insofar as the ALJ relied on Dr. Fischer's opinion that the only

documented injury was a "musculoskeletal injury," Dr. Fischer's opinion does not appear to be

consistent with the remainder of the medical evidence in view of the February 2011 MRI results and the consulting neurosurgeon's opinion documenting a herniated disc and additional objective findings. For these reasons, the ALJ's decision to credit the ME's opinion over the opinion of Dr. Beresh, plaintiff's treating pain management specialist, is not substantially supported by the record.

The ALJ also gave "great weight" to the October 2011 assessment of nonexamining state agency physician Dr. Dmitri Teague, M.D., and to the June 2011 initial RFC assessment of nonexamining state agency physician Dr. Elizabeth Das, M.D., each of whom assessed plaintiff as capable of performing a range of light work. (Tr. 25, citing Tr. 116, 127; Tr. 97, 106). The ALJ found only that Dr. Teague's opinion was "generally consistent with the medical evidence of record as a whole," and she noted that Dr. Das imposed "the same restrictions." (Tr. 25-26). The ALJ did not give valid reasons for crediting the opinions of these nonexamining physicians over the opinions of plaintiff's treating pain management specialist, Dr. Beresh.

It may be that the record warrants a decision declining to give "controlling weight" to the treating physician's opinion. However, the Sixth Circuit "has made clear that [the Court] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion[.]" *Cole*, 661 F.3d at 939 (internal quotation marks omitted). Even if Dr. Beresh's opinion does not warrant "controlling weight," it still must be weighed in accordance with the regulations. Because the ALJ failed to comply with the treating physician rule in assessing Dr. Beresh's opinion and failed to properly evaluate the nonexamining physicians' opinions, plaintiff's first assignment of error should be sustained.

**2. The ALJ's credibility finding is not supported by substantial evidence.**

Plaintiff alleges as his second assignment of error that the ALJ erred by making a

16

credibility finding that is not supported by substantial evidence. (Doc. 12 at 17-21).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ." 42 U.S.C. § 423(d)(5)(A). Subjective complaints are evaluated under the standard set forth in *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. *Id*. at 853. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id*.

In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of the plaintiff's doctors. *Felisky*, 35 F.3d at 1040. Additional specific factors relevant to the plaintiff's allegations of pain include his daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes to alleviate his pain or

17

other symptoms; treatment other than medication plaintiff has received for relief of his pain; and any measures the plaintiff uses to relieve his pain. *Id*. at 1039-40; 20 C.F.R. §§ 404.1529(c), 416.929(c). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish he is disabled, *Duncan,* 801 F.2d at 853, statements about his pain or other symptoms are not sufficient to prove his disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id*.

Here, the ALJ discounted plaintiff's credibility on several grounds. The ALJ found that the objective medical evidence of record was inconsistent with plaintiff's subjective allegations of pain and functional limitations. (Tr. 24). The ALJ cited specific examination findings which support this aspect of her credibility determination. (*Id*.). In addition, the ALJ found that plaintiff had not pursued treatment modalities commonly seen with disabling impairments; plaintiff had been able to work despite a degloving injury that dated back to 1990; plaintiff's allegations as to the severity of his physical impairments were inconsistent with his reports of activities of daily living and he indicated that his activities of daily living improved with medication; and his substance abuse called his credibility into question. (Tr. 24-25). In making these additional findings, the ALJ erred by misconstruing the record in a number of material respects such that her credibility finding is not substantially supported.

First, it appears the ALJ improperly discounted plaintiff's credibility because he "has not pursued treatment modalities commonly seen with disabling impairments." (Tr. 24). Although an ALJ can discount allegations of debilitating pain based on a conservative course of treatment,

18

this is not a proper basis for rejecting a claimant's credibility where there is a good reason for the claimant's failure to seek more aggressive treatment. *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506-07 (6th Cir. 2013) ("Social Security Ruling 96-7p strongly suggests that a claimant should be allowed to explain his or her reasons for not pursuing certain treatment options.") (citing *Carmickle v. Comm'r,* 533 F.3d 1155, 1162 (9th Cir. 2008)). Here, plaintiff offered a valid reason for failing to pursue more aggressive treatment, testifying that he had no income or medical coverage and no means to pay for injections or surgery. (Tr. 39, 50). The ALJ acknowledged plaintiff's testimony but did not discuss whether the reasons offered by plaintiff excused his failure to pursue more aggressive treatment. Rather, the ALJ simply stated:

> [Plaintiff] testified that physical therapy aggravated his pain and indicated that he did not undergo injections or surgery due to financial limitations. Instead, [plaintiff] only uses pain medication, which he acknowledged provides some relief of his pain for two to three hours at a time.

(Tr. 24). It therefore appears that the ALJ discounted plaintiff's credibility based on a conservative course of treatment notwithstanding plaintiff's testimony that he lacked the financial resources to pay for more aggressive treatment. This was improper under the applicable law.

In addition, the ALJ improperly discounted plaintiff's credibility because she found that according to his testimony, "he remains capable of driving and grocery shopping without significant difficulty." (Tr. 25). The record does not support the ALJ's finding in this regard. Plaintiff testified that he lifts only small items when he goes grocery shopping and he has not lifted anything other than a loaf of bread or gallon of milk since his injury. (Tr. 55-56). He also testified that he drives no more than 10 to 15 minutes at a time. (Tr. 40). The record therefore belies the ALJ's finding that plaintiff's activities of grocery shopping and driving are not significantly impacted by his impairments.

19

Finally, the ALJ erred by discounting plaintiff's credibility based on his substance abuse. Had plaintiff been dishonest about his substance abuse, the ALJ would have been justified in discounting his credibility on this basis. *See Walters,* 127 F.3d at 531 (inconsistency is an appropriate basis for an adverse credibility finding). However, the ALJ did not point to any evidence in the record that is inconsistent with plaintiff's testimony concerning his history of substance abuse or explain how plaintiff's testimony cast doubt on his credibility. The ALJ noted that plaintiff testified he has a history of several DUIs, with the last one dating from 2004, and he continues to drink. (Tr. 25; *see* Tr. 40- plaintiff testified he drinks "an occasional beer"). The ALJ did not explain why this testimony called plaintiff's credibility into question. With respect to plaintiff's testimony about his marijuana use, the ALJ stated: "He denied smoking marijuana since August 2011; yet, a drug screening in September 2011 was positive for tetrahydrocannabinol (THC), methadone (MTD), and oxycontin (OXY) [Tr. 348]." (Tr. 25). The ALJ did not explain how a drug screening report that showed THC in plaintiff's system on September 13, 2011, was inconsistent with plaintiff's testimony that he last smoked marijuana in August 2011 before he started seeing Dr. Beresh. (Tr. 40-41). Nor did the ALJ explain how positive results for methadone and oxycontin contradicted plaintiff's claim that he smoked marijuana at any point in time or otherwise called plaintiff's credibility into question. In fact, the drug screening report shows that plaintiff was prescribed methadone on August 24, 2011. (Tr. 348).

Thus, the ALJ misconstrued plaintiff's testimony and other evidence of record when evaluating plaintiff's subjective complaints. The Sixth Circuit has held that in a case such as this where an adverse credibility determination is based in part on invalid reasons, a harmless error analysis applies and the ALJ's decision will be upheld as long as substantial evidence remains to

support it. *Johnson*, 535 F. App'x at 506-07 (citing *Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012)). While any one of the errors discussed above, considered in isolation, would constitute harmless error, taken together they undermine the ALJ's credibility determination to such an extent that it is not supported by substantial evidence. The Court is not bound to defer to the ALJ's credibility finding under these circumstances. *See Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) (noting that credibility determinations are within the province of the ALJ but declining to defer to ALJ's credibility determination because there did not appear to be any valid reason for disbelieving the claimant's assertions).

Plaintiff's second assignment of error should be sustained.

### 3. This matter should be reversed and remanded.

Remand is appropriate if the Commissioner applied an erroneous principle of law or failed to consider certain evidence. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* (citations omitted). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Id.*

This matter should be reversed and remanded pursuant to sentence four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date of January 17, 2011 and prior to September 9, 2012, the date he was found to be disabled. *See Faucher,* 17 F.3d at 176. This matter should be remanded for reweighing of the medical evidence, reassessment of plaintiff's

credibility, and the eliciting of additional medical testimony and vocational evidence as warranted for the period in issue.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _3/26/15_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

GARY BOSHEARS,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-335
Dlott, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).